IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JORGE CONCEPCION,** : | |
| Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO. 25-CV-4479** |
| : | |
| **KYLE A. RUSSELL**, *et al.*, : | |
| Defendants. : | |

**MEMORANDUM**

**BAYLSON, J.**                                                                                                       **AUGUST   25, 2025**

Jorge Concepcion, a prisoner currently incarcerated at the Lehigh County Jail ("LCJ"), brings this civil action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of medical and dental care at the facility and alleging retaliation. He also moved to proceed *in forma pauperis*. For the following reasons, the Court will grant Concepcion leave to proceed *in forma pauperis* and dismiss his Complaint in part.

**I.      FACTUAL ALLEGATIONS**[1]

Public dockets reflect that Concepcion has been incarcerated at LCJ since April 17, 2025, in connection with probation revocation proceedings. *See Commonwealth v. Concepcion*, No. CP-39-CR-0003331-2020 (C.P. Lehigh). It appears that the probation violation relates to new criminal charges recently filed against Concepcion in Montgomery County. *Commonwealth v. Concepcion*, No. CP-46-CR-0002400-2025 (C.P. Montgomery). On July 10, 2025, Concepcion pleaded guilty in the Montgomery County Court of Common Pleas to one of those charges and

---

[1] The following allegations are taken from the Complaint, documents attached to the Complaint, and public dockets of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the sequential pagination supplied to the Complaint by the CM/ECF docketing system.

1

was sentenced to six months in jail. *Id.* He is awaiting his probation revocation hearing in Lehigh County. In the present civil case, Concepcion names the following Defendants, all of whom are employed at LCJ: (1) Warden Kyle A. Russell; (2) Deputy Warden of Security Robert McFadden; (3) RN Snyder; (4) Grievance Investigator Cliff Knappenberger; (5) Director of Nursing Vicky Brealey; (6) Assistant Director of Nursing Rhonda Gaetaniello; (7) RN Klein; (8) David Kneal; and (9) Lt. Kowol. (Compl. at 1-2.) His constitutional claims can be grouped into three general categories.

     First, Concepcion alleges that two nurses at LCJ—RN Snyder and RN Klein—have been denying him three prescribed blood pressure medication. At 1:30 p.m. on July 4, 2025, when Concepcion "approached the medication cart to get [his] morning and noon medications," RN Snyder asked why he missed his morning dose. (*Id.* at 5.) Concepcion explained that he is "partially deaf" and has tinnitus, suggesting that he often misses the call for medication due to hearing problems, and that this is why he did not receive his morning medication. (*Id.* at 5, 11.) RN Snyder allegedly "became bel[l]igerent and disrespectful" in response to Concepcion and denied him three "vital blood pressure medications that are crucial to [his] health." (*Id.* at 5.) Concepcion alleges that this is the second time Snyder denied his medications despite being told of his hearing problems. (*Id.*) He also experienced "the same identical issue" with RN Klein, even though "every other RN simply gives [him his] meds with no problem." (*Id.*)

     In a grievance about the incident, which Concepcion attached as an exhibit to his Complaint, he explained that the July 4 incident was one of one of "a couple of incidents" relating to Concepcion's non-receipt of his blood pressure medication, and the third time he "had a confrontation with nurses over this issue." (Compl. at 11.) The grievance, which Concepcion notes was not his first addressing this issue, further explains that Concepcion occasionally misses

the call for medication because he does not have his hearing aids "and all [he] hear[s] is noise in [his] head." (*Id.*)

Concepcion "experienced tightness of chest, severe headache and anxiety attack" from missing his blood pressure medication "as a result of Nurse Snyder and Nurse Klein's negligence." (*Id.* at 6.) He notified an unidentified nurse, who told him to "fill out a sick call request" but otherwise ignored his symptoms. (*Id.*) On or about July 11, 2025, Concepcion did not receive his blood pressure medication for three days,[2] causing him to be "rushed to medical with a blood pressure reading of 180-100, tightness of chest, headache and panic attack and chest pain." (*Id.*) Concepcion attempted to address the issues with his medication by writing "requests" and grievances to the "medical department" and Defendants Brealey and Gaetaniello "to no avail." (*Id.*) He also sent grievances to Defendant Knappenberger, the grievance investigator, (*id.*), but claims his grievances were "frivolously and maliciously denied, rejected or simply go missing," (*Id.* at 4). Additionally, Concepcion's fiancé "left numerous messages" for Defendant Warden Russell, without receiving a response, and also tried discussing the matter with other nurses or supervisors at LCJ, who stopped taking her calls. (*Id.* at 6.)

The second impetus for Concepcion's claims is an interaction he had on July 8, 2025, with Dr. Kneal, a dentist who was scheduled to extract Concepcion's molar. (*Id.* at 7.) During the appointment, Dr. Kneal told Concepcion to sit in the dental chair and anesthetized the location where the surgery was going to occur. (*Id.*) Concepcion alleges he was "a bit concerned because at no time did [the dentist] provide protective wear to absorb the saliva, blood or [anesthesia] that was over flowing from [his] mouth" and, rather, instructed Concepcion to

---

[2] It is unclear whether the three-day period to which Concepcion refers began on July 11 or ended on that date. Either way, this would appear to be at least the fourth time Concepcion did not receive his blood pressure medication.

3

swallow. (*Id.*) Concepcion describes this as "uncommon and unethical" and outside the relevant standard of care. (*Id.*) When he asked about it, the dentist allegedly told him that he had "no rights," was in jail, and to do what he was told, or the dentist would not extract his tooth. (*Id.*) Concepcion complied but "was angry and teared up." (*Id.*) He claims that he "was sick with nausea and vomiting for two days" after the procedure and was "traumatized" by this experience. (*Id.*)

Third, Concepcion alleges he is being "targeted" by Defendant Kowol for "filing grievances and [his] concerns about Mr. Kowol." (*Id.* at 8.) In that regard, Concepcion alleges that he has observed Kowol abuse his authority and notes that Kowol "has a number of pending cases against him for excessive force." (*Id.*) During the second week of June, Kowol allegedly directed another correctional officer to enforce a "disciplinary action" against Concepcion. (*Id.*) When Concepcion "went to Montgomery county" on July 9, 2025, he was told he could not bring his bible or legal work. (*Id.*) When he returned to LCJ, he claims his "1983 complaint" and other documents pertaining to that complaint were gone (it is unclear if Concepcion is referring to a blank form or a completed complaint). (*Id.*) Concepcion also asserts that Kowol, Deputy Warden McFadden, and Warden Russell "are no strangers to allegations of excessive force, covering up for each other and civil suits against them." (*Id.*) Concepcion filed a request on July 14, 2025, asking for another form complaint, and a notation on the request reflects that a "1983 form [was] provided" to him. (*Id.* at 10.)

4

Based on these allegations, Concepcion alleges that the Defendants were deliberately indifferent to his serious medical needs and violated his First Amendment rights.[3] (*Id.* at 6, 7, 8.) He seeks nominal, compensatory, and punitive damages in unspecified amounts. (*Id.* at 5.)

## II.    STANDARD OF REVIEW

The Court grants Concepcion leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court accepts the facts alleged in the *pro se* Complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v.*

---

[3] Concepcion also alleges that there is a "systemic problem at LCJ" and notes there is a "significant racial disparity between officials and detainees." (Compl. at 6 (cleaned up).) To the extent Concepcion intended to pursue an Equal Protection claim based on this allegation, which is not clear, he falls far short of stating a plausible claim. *See Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (to establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class"); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (explaining that plaintiffs pursuing an equal protection claim must allege that they were purposefully discriminated against, in that "they received different treatment from that received by other individuals *similarly situated*.").

[4] However, as Concepcion is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

5

*United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Concepcion is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).

### III.  DISCUSSION

Concepcion brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Additionally, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). A supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

### A. Claims Based on the Denial of Blood Pressure Medication

Concepcion claims his constitutional rights were violated when he was denied his blood pressure medication on several occasions.[5] To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical

---

[5] Regardless of whether Concepcion is considered pretrial detainee or a convicted prisoner during the relevant events, and thus whether the Fourteenth or Eighth Amendment governs his conditions claims, the standard is the same. *See Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners, and pretrial detainees" (citations omitted)); *Gagnon v. PBPP/DOC*, No. 24-6566, 2025 WL 209182, at *4 n.8 (E.D. Pa. Jan. 15, 2025) ("The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.").

treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Concepcion has stated a basis for a claim against RN Snyder and RN Klein because he alleges that they repeatedly withheld his blood pressure medication from him—on one occasion for three days—causing him to be "rushed to medical with a blood pressure reading of 180-100, tightness of chest, headache and panic attack and chest pain." (Compl. at 5.) "[Withholding] medication needed to control a prisoner's blood pressure for no medical reason" may demonstrate deliberate indifference to a serious medical need. *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990); *see also Barner v. Mackie*, No. 17-1608, 2017 WL 5633399, at *2 (6th Cir. Nov. 2, 2017) ("Barner's statements that he had high blood pressure, along with medications to treat it, could lead one to reasonably infer that a physician diagnosed him as needing treatment for high blood pressure—a serious medical need."). Further, Concepcion alleges that he repeatedly attempted to address this issue by filing requests and grievances with supervisory staff, and having his fiancé reach out on his behalf, but that the Defendants whom they contacted—Russell, Brealey, Gaetaniello, and Knappenberger—did not take action despite being informed of the problem.[6] Reading the Complaint liberally in a light most favorable to

---

[6] Although Concepcion alleges that he or his fiancé contacted Defendants Russell, Brealey, Gaetaniello, and Knappenberger to resolve the issues with the blood pressure medication, he does not raise any specific allegations against Defendant McFadden, who is the Deputy Warden of Security. Rather, he generally alleges that McFadden, along with the other Defendants, was "either directly or indirectly deliberately indifferent to [his] serious medical needs" and generally "reject[ed] and denied grievances that were filed on 5-19-25 – 7-08-25 and several other occasions." (Compl. at 6.) Since these allegations are pled generally, Concepcion has not adequately pled McFadden's personal involvement in events related to his non-receipt of blood pressure medication. Further, to the extent Concepcion is bringing claims against McFadden or any other Defendant based solely on the grievance process, those claims are meritless because issues pertaining to the grievance process itself do not translate to a constitutional violation. *See, e.g., Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) ("[P]risoners do not

8

Concepcion, his allegations support an inference of deliberate indifference sufficient to survive screening against those officials who allegedly took no action despite having been informed of an ongoing problem with nurses failing to provide Concepcion with his blood pressure medication. *See Wiertella v. Lake Cnty., Ohio*, 141 F.4th 775, 783 (6th Cir. 2025) (agreeing that defendants were not entitled to qualified immunity on Eighth Amendment claim when they were "were aware that [plaintiff] had been taking several essential medications for serious medical conditions, and they knew that he did not have access to these medications in the Jail. Yet they intentionally chose not to provide those medications in a timely manner"); *Carter v. Broward Cnty. Sheriff Off.*, 710 F. App'x 387, 391 (11th Cir. 2017) (*per curiam*) (vacating dismissal of claim on screening where "[p]rison officials were subjectively aware of Carter's serious medical needs because he repeatedly complained about not receiving his medication on time or at all and explained that he experienced chest pains and shortness of breath as a result. Carter's allegations also show that prison officials disregarded that risk by failing to ensure that his medication was distributed as prescribed."); *King v. Busby*, 162 F. App'x 669, 671 (8th Cir. 2006) (*per curiam*) ("King identified which defendants were responsible for the missed medication: he grieved repeatedly to Chief Jailer Theresa Bonner, Chief Deputy Sheriff Robert Cooper, and Jail Administrator Robert Harper about missed doses of his blood-pressure and pain medication. These grievances tend to show that Bonner, Cooper, and Harper were aware of King's missed medication and may have failed to take corrective action because King continued to miss medication doses."); *Haltiwanger v. Mobley*, 230 F.3d 1363, 2000 WL 1371098, at *1 (8th Cir. 2000) (reversing the dismissal of Eighth Amendment deliberate indifference claim where

---

have a constitutional right to prison grievance procedures." (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*))).

defendant Goldman "periodically refused" to give plaintiff his medication and two other officials "failed to rectify this situation, despite [plaintiff's] repeated grievances, in that Goldman continued to deprive him of his medication"); *Folks v. Danberg*, No. 09-103, 2009 WL 1530170, at *4 (D. Del. June 1, 2009) (prisoner who wrote to commissioner and warden about inadequate care could proceed past screening because "in the present case Folks alleges that he is not receiving **any** medical care and made that fact known" to those defendants).

### B. Claims Based on Dental Visit

Concepcion's claims based on his July 8, 2025 dental procedure are also governed by the standards for deliberate indifference to medical needs claims. "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Where a prisoner is afforded inadequate care, the distinction between medical negligence and deliberate indifference often turns on the provider's intent, *i.e.*, whether the inadequacy resulted from an error in professional judgment or whether another motive drove the treatment decision. *Id.* at 69; *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 541 (3d Cir. 2017) (finding a basis for deliberate indifference where nurse not only deviated from the standard of care but "repeatedly ignored [plaintiff's] requests for treatment based on non-medical reasons," which suggested a non-medical motive and a "pattern of disinterested conduct"). To plead deliberate indifference in the course of a medical or dental procedure, a plaintiff generally must allege that the defendant "maliciously intended to cause [the plaintiff] pain or otherwise performed the procedure in a way that he knew would create a substantial risk of complications." *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). Additionally, "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose,

violates the Eighth Amendment." *Talbert v. Corr. Dental Assocs.*, 731 F. App'x 145, 150 (3d Cir. 2018) (*per curiam*) (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

Concepcion alleges that Dr. Kneal performed the molar extraction in a manner that deviated from the standard of care by directing him to swallow blood, saliva, and anesthesia. When Concepcion objected, Dr. Kneal allegedly told him that he had "no rights" because he was "in jail," and that he had to swallow if he wanted the dentist to perform the procedure. (Compl. at 7.) Concepcion reluctantly complied and for two days thereafter experienced nausea and vomiting. Deliberate indifference is a high threshold and is hard to establish in the context of a tooth extraction, but such claims have been permitted to proceed past screening when the procedure greatly deviated from the standard of care, the treatment decisions were not grounded in medical judgment, and the plaintiff suffered harm as a result. *Compare King v. United States*, 536 F. App'x 358, 361 (4th Cir. 2013) (concluding, in affirming dismissal of a deliberate indifference claim at screening over dissent, that the "failure to take common-sense steps before performing the procedure" to prevent unnecessary dental procedure on incorrect inmate who "tried to inform" staff of error did not "rise to the level of deliberate indifference."); *McGowan*, 612 F.3d at 641 (affirming dismissal of claim against dentist on screening where plaintiff alleged that he saw the dentist use "something that looked to him like an ice pick" to dig splinters of fractured tooth from his gums, but reversing as to claims predicated on delay of treatment for complications from surgery); *Gillespie v. Hogan*, 182 F. App'x 103, 105 (3d Cir. 2006) (*per curiam*) (dismissing appeal as baseless where plaintiff brought deliberate indifference claim against dentist who left behind fragments of plaintiff's tooth and failed to take his medical history prior to the procedure); *Finnegan v. Maire*, 405 F.3d 694, 695-96 (8th Cir. 2005) (*per curiam*) (affirming dismissal of deliberate indifference claim at screening over dissent, where

plaintiff alleged the defendant who extracted his tooth "was not qualified as an oral surgeon, that he failed to recognize he had punctured an artery, and that, despite [plaintiff's] extensive bleeding, [the defendant] merely sutured and covered the area where he had removed two teeth" even though he provided medical attention after the procedure); *Carter v. Sims*, No. 10-2596, 2012 WL 2863424, at *7 (N.D. Ill. July 9, 2012) ("At most, a botched tooth extraction is 'only negligence, perhaps gross negligence,' because there is nothing in the record 'suggesting that [the dentist] maliciously intended to cause [the plaintiff] pain or otherwise performed the procedure in a way that he knew would create a substantial risk of complications.'" (quoting *McGowan*, 612 F.3d at 640)) *with Echols v. Craig*, 855 F.3d 807, 812 (7th Cir. 2017) ("Nothing at this [screening] stage conclusively rebuts Echols' plausible allegation that suturing the drill bit and gauze into his mouth was far afield of accepted professional medical standards or the inference that it was so far afield that a jury might infer the action was not merely negligent, which would not violate the Eighth Amendment, but reflected deliberate indifference, which would"); *Gaffney v. Perelmuter*, No. 16-3196, 2017 WL 4127922, at *1 (2d Cir. Jan. 11, 2017) (vacating dismissal of deliberate indifference claim against a dentist on screening based on a botched tooth extraction); *Szemple v. Univ. of Med. & Dentistry of N.J.*, 451 F. App'x 187, 191 (3d Cir. 2011) (*per curiam*) (reversing dismissal of deliberate indifference claims on screening where plaintiff alleged that doctor performed tooth extraction without sedation despite knowing of plaintiff's heart condition causing plaintiff's "heart rate to increase, chest pains, and shortness of breath," continued with the procedure despite plaintiff's complaints of pain and profuse bleeding, and discharged plaintiff while he was still bleeding). Given Concepcion's allegation that he was needlessly subjected to harm (*i.e.*, two days of nausea and vomiting) when the doctor deviated from the standard of care, it is at least arguable that Concepcion has alleged sufficient

factual matter to raise an inference of deliberate indifference. Accordingly, at this early stage of the case, the Court will permit this claim to proceed past screening.[7]

### C.  First Amendment Claims

The Court understands Concepcion to be bringing a First Amendment retaliation claim against Defendant Kowol for "targeting" him. (Compl. at 8.) To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a lawsuit or grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530-31 (3d Cir. 2003). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct can establish a causal link between the

---

[7] There is no basis for Concepcion to proceed against any other Defendant in connection with this claim, even those who may have been involved in handling his grievances about the extraction after it occurred. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of [the plaintiff]'s prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

two. *See Watson*, 834 F.3d at 422. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Concepcion's allegations are far too vague and generalized to state a retaliation claim against Kowol or any other Defendant for several reasons. Concepcion alleges that he filed grievances about Kowol, but he does not provide any details about when he filed those grievances, what specific conduct they concerned, and whether Kowol (or any other Defendant) was aware of those grievances. (Compl. at 8.) He adds that excessive force cases have been filed against Kowol, but he does not claim that *he* filed or plans to file an excessive force case against Kowol. To the extent Kowol directed enforcement of an unspecified "disciplinary action" against Concepcion, (*id.*), there are no specific facts linking this incident with Concepcion's grievances or any other protected conduct. *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."). Similarly, Concepcion has not linked his allegation that his "1983 complaint and other documents pertaining to [his complaint] disappeared," (Compl. at 8), with his filing of grievances or other protected conduct in a manner suggestive of a retaliatory motive. Indeed, it is not clear that any of the named Defendants were actually responsible or somehow involved with the missing form since Concepcion relies exclusively on conclusory speculation that Defendants Kowol, McFadden and Warden "cover[] up for each other" to allege their involvement. (*Id.*) In sum,

Concepcion's allegations fall far short of stating a plausible retaliation claim against any of the Defendants.[8] *See generally Iqbal*, 556 U.S. at 678 (explaining that legal conclusions and "unadorned, the-defendant[s]-unlawfully-harmed-me accusation[s]" are insufficient to state a claim). Accordingly, the Court will dismiss Concepcion's First Amendment claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Concepcion leave to proceed *in forma pauperis*, permit him to proceed on his deliberate indifference claim against Dr. Kneal and his deliberate indifference claims against Defendants Snyder, Klein, Russell, Knappenberger, Brealey, and Gaetaniello pertaining to his blood pressure medication. The Court will dismiss the balance of the Complaint without prejudice. Concepcion will be given an option to either proceed on his remaining deliberate indifference claims or to file an amended complaint if he seeks to amend his dismissed claims. If he files an amended complaint, he must reassert all claims upon which he seeks to proceed, including any claims that have not been dismissed, because an amended complaint supersedes the original Complaint and becomes the governing pleading in the case that dictates the contours of the claims at issue. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). An appropriate Order follows, which provides further instructions as to Concepcion's options for proceeding.

BY THE COURT:

/s/ Michael M. Baylson

**MICHAEL M. BAYLSON, J.**

---

[8] To the extent the Complaint can be understood to assert a claim for denial of access to the courts based on the missing "1983 complaint," (Compl. at 8), that claim also fails because Concepcion has not described any actual injury—i.e., the loss of a nonfrivolous underlying claim—that he suffered due to the loss of this and related documents, nor has he alleged the absence of any other remedy apart from a denial of access suit. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).