**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JORGE CONCEPCION,**<br>**Plaintiff,**<br><br>**v.**<br><br>**KYLE A. RUSSELL, CLIFF KNAPPENBERGER, VICKY BREALEY, RHONDA GAETANIELLO, DAVID KNEAL, LISA SNYDER, and SKYE KLINE,**<br>**Defendants.** | **CIVIL ACTION No. 25-4479** |

**MEMORANDUM**

**Baylson, J.** **July 29, 2026**

## I. INTRODUCTION

Plaintiff Jorge Concepcion, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 and Pennsylvania negligence law arising from medical care and grievance-related events during his detention at Lehigh County Jail ("LCJ"). ECF 20. He claims that nurses denied him prescribed blood-pressure medication, that the jail dentist mistreated him during a tooth extraction, that supervising officials failed to intervene, and that jail officials interfered with or retaliated against his use of the grievance process. Id.

For the foregoing reasons, summary judgment will therefore be **GRANTED** on Counts I, II, and III, and Count IV is **DISMISSED** without prejudice under 28 U.S.C. § 1367(c)(3).

## II. PROCEDURAL HISTORY

Plaintiff Concepcion was incarcerated at LCJ from April 2025 until his release on August 23, 2025. ECF 41-2, ¶¶ 8, 59. Plaintiff Concepcion brought the instant suit on August 4, 2025, against various prison medical and administrative personnel involved in his detention at LCJ, including two nurses who administered his medication, Nurses Snyder and Kline; two nursing

supervisors, Director of Nursing Vicky Brealey and Assistant Director of Nursing Rhonda Gaetaniello; the jail dentist, Dr. David Kneal; the jail's Grievance Investigator, Cliff Knappenberger; and the Warden, Kyle Russell. ECF 3; ECF 20 at 17.

Plaintiff Concepcion's Amended Complaint, filed on December 4, 2025, alleges four counts against various defendants:

I. Count I alleges deliberate indifference to medical needs under 42 U.S.C. § 1983 against Nurses Snyder and Kline and against Dr. Kneal,

II. Count II alleges supervisory liability under § 1983 against Warden Russell and Nurses Brealey and Gaetaniello,

III. Count III alleges retaliation and interference with the grievance process under § 1983 against Warden Russell and Grievance Investigator Knappenberger,

IV. Count IV alleges medical negligence under state law against Defendants Snyder, Kline, Kneal, Brealey, and Gaetaniello.

ECF 20 at 21.

Defendant Nurses Snyder, Kline, Brealey, Gaetaniello, and Dentist Dr. Kneal are referred to as the "Medical Defendants." Defendant Warden Russell and Grievance Investigator Knappenberger are referred to as the "Prison Defendants."

The Medical Defendants moved for summary judgment on April 7, 2026, to which Plaintiff Concepcion responded on April 10, 2026. ECF 41; ECF 44. Prison Defendants moved for summary judgment on May 6, 2026. ECF 45. Plaintiff did not file a response to the Prison Defendants' motion for summary judgment, despite being ordered to do so by this Court on June 8, 2026, after a one-month *sua sponte* extension beyond the 14-day required response period. ECF 47; L. Civ. R. 7.1(c).

## III. UNDISPUTED FACTS

The following facts are undisputed: Plaintiff Concepcion was incarcerated at LCJ beginning in April 2025. ECF 41-2, ¶¶ 1–2, 8. Plaintiff Concepcion had two incidents while incarcerated, one pertaining to his blood pressure medication and one pertaining to a dental procedure. See generally ECF 20; ECF 41-2; ECF 45-2.

Although the Court notes there are disputes of fact as to what occurred during the medication and dental incidents, such disputes are insufficient and immaterial for purposes of summary judgment on Plaintiff's claims. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### A. Missing Medication

On April 21, 2025, Plaintiff Concepcion was evaluated for hypertension (high blood pressure) and started on a three-drug regimen: lisinopril, metoprolol, and hydrochlorothiazide, each taken once daily. ECF 41-2, ¶¶ 9–13. For the first two months of his incarceration, April and May 2025, Concepcion received 100% of his prescribed doses. Id. ¶¶ 14–19. In June 2025, that dipped slightly to 97%, but the record shows no grievance, sick call, or inmate request tied to any missed dose that month. Id. ¶¶ 20–23; see also ECF 41-6. He then received every dose scheduled for July 1, 2, and 3, 2025. ECF 41-2, ¶¶ 24–26.

Plaintiff Concepcion missed his medications on July 4, 2025. Id. ¶¶ 28–29; ECF 41-5 at 5. Nurse Snyder oversaw the medication cart that morning, where Concepcion did not present himself for his dose. ECF 41-2, ¶¶ 27–28. Snyder logged him as absent. Id. ¶ 28; ECF 41-5 at 5. Plaintiff Concepcion's grievance, filed that same day, states that he approached the cart in the early afternoon, and explained to Snyder that he is partially deaf and suffers from tinnitus, conditions he says made him miss the earlier call for medication. ECF 20 at 29; ECF 41-2, ¶ 29; ECF 44. He

alleges that Snyder responded with hostility, telling him she was not obligated to give him his medication, and that this was not the first time she or Nurse Kline had denied him medication despite knowing about his hearing impairment. ECF 20 at 17, 19; ECF 44. Nurse Cindy Stettner, the Health Services Administrator at LCJ, responded to Plaintiff's grievance, stating that Concepcion was told that his doses were no longer on the cart. ECF 41-2, ¶¶ 36–40. If he wanted, he could request an escort to the medical department to receive the missed dose. Id. ¶ 41. He did not make that request. Id. ¶ 42.

After missing the medication on July 4, 2025, Plaintiff Concepcion resumed his medications without interruption for the following four days. Id. ¶¶ 43–46; ECF 41-5 at 5. He received his blood pressure medications on July 5, 6, 7, and 8, 2025. ECF 41-2, ¶¶ 43–46; ECF 41-5 at 5. On July 9, 2025, he was transferred out of LCJ to the Montgomery County Correctional Facility. ECF 41-2, ¶ 47. Concepcion returned to LCJ on July 11, 2025. Id. ¶ 50. His Medication Administration Record confirms no doses were given between July 9 and July 11, because he was not there to receive them and LCJ has no ability to administer medication to an inmate outside of its custody. Id. ¶¶ 51–52; ECF 41-5 at 5.

Upon returning to LCJ, Plaintiff Concepcion visited the medical department complaining of chest pain and reported that he had been "on writ" and had gone without his heart medications. ECF 41-2, ¶¶ 53–54. Staff performed an EKG, which came back at his baseline. Id. ¶ 55; ECF 41-5 at 2. They also checked his blood pressure. An initial reading of 180/120 dropped to 144/105 once he had been lying down for the EKG. ECF 41-2, ¶ 56. Concepcion, however, alleges that by the time he went to medical on July 11, 2025—after three days without his blood pressure medication—his reading was closer to 180/100, accompanied by chest pain, headache, and a panic attack, and that Nurse Snyder, Nurse Kline, Warden Russell, Nurse Brealey, and Nurse Gaetaniello

all knew that this was an ongoing problem but did nothing to fix it. ECF 20 at 19. The record shows that, after this medical evaluation on July 11, 2025, new orders were entered to resume his medications, which included medications for high blood pressure. ECF 41-2, ¶ 57. From July 12, 2025, through the end of the month, and then straight through to his discharge on August 23, 2025, the record shows he received every dose. Id. ¶¶ 58–60; ECF 41-5 at 5.

**B. Dental Treatment**

The dental episode unfolded on a separate track, though it overlapped in time with the medication dispute. On July 1, 2025, Dr. Kneal examined Plaintiff Concepcion for a cracked, decayed lower left molar. ECF 41-2, ¶¶ 61–62. He prescribed pain medication and scheduled an extraction. Id. ¶¶ 63–65. Concepcion consented to the procedure, which took place a week later, during the morning of July 8, 2025. Id. ¶¶ 65–66.

The Parties agree on the basic mechanics of the extraction but disagree about the patient experience and what was said. The Court finds, however, that the dispute about what was said is not material. Fed. R. Civ. P. 56(a); Anderson, 477 U.S. at 248. Dr. Kneal's account is that he used a local anesthetic and followed his usual infection control routine: mask, gloves, protective eyewear, and a sterile barrier for his instruments. ECF 41-2, ¶¶ 67–77; ECF 41-4 at 2; ECF 41-5 at 6. He acknowledges that suction was not used but explains that LCJ does not permit suction during dental procedures for security reasons. ECF 41-2, ¶¶ 78–79; ECF 41-4 at 3. Gauze was used instead, both during the extraction and afterward to control bleeding, which Dr. Kneal maintains satisfies the applicable standard of care. ECF 41-2, ¶¶ 79, 81; ECF 41-4 at 3. Patients are directed to close their mouths and swallow rather than spit during the procedure, since frequent spitting increases bleeding and can create a biohazard problem. ECF 41-2, ¶¶ 80–81; ECF 41-4 at 3. According to Dr. Kneal, the extraction had no noted complications, and Plaintiff Concepcion

never submitted a sick call slip or inmate request tied to nausea, vomiting, or any other post-extraction symptom. ECF 41-2, ¶¶ 83–84; ECF 41-4 at 3–4.

Plaintiff Concepcion disagrees. He alleges that Dr. Kneal provided no protective materials to absorb the saliva, blood, and anesthesia pooling in his mouth, and instead ordered him to swallow it. ECF 20 at 19. When Plaintiff questioned this, he alleges Dr. Kneal told him: "(1) you have no rights, (2) you are in jail, and (3) you must do as told or he would not extract the tooth." Id. Plaintiff Concepcion says he had been in pain for three weeks waiting on the procedure, and that afterward he suffered nausea and vomiting for two days and came away feeling traumatized. Id. Dr. Kneal denies ever making the "no rights" statement, though he acknowledges that a patient who becomes uncooperative during a dental procedure, in a way that risks harm to the patient or to him, will be told the extraction will not proceed. ECF 41-4 at 3.[1]

### C. Grievance Filed

The record contains one formal grievance filed by Plaintiff Concepcion connected to any of the events at issue. This grievance, filed on July 4, 2025, describes his hearing impairment and Nurse Snyder's alleged refusal to give him his blood pressure medication. ECF 20 at 29; ECF 41-2, ¶ 29; ECF 41-6. LCJ's grievance policy, which Warden Russell attests was provided to Plaintiff Concepcion at intake and was also available on request and through the inmate tablet system, gives an inmate 21 days to file a formal grievance and lays out a defined review and appeal structure. ECF 45-2, ¶ 8; see also ECF 45-2, Exhibit A; ECF 45-2, Exhibit C.

That grievance was investigated and answered. ECF 41-2, ¶¶ 36–37; ECF 41-6 at 3. Nurse Stettner wrote back that, except for July 4, 2025, Plaintiff was compliant with his medication, that

[1] Plaintiff Concepcion does not address these dental allegations in his motion in opposition for summary judgment. ECF 44.

his doses were no longer ready for him during the afternoon pass, that this was explained to him at the time, and that he could have requested an escort to medical to receive the missed dose in the future. ECF 41-2, ¶¶ 36–42; ECF 41-6 at 3–4. The response closed by describing his overall care as "thorough and appropriate." ECF 41-6 at 4. Investigator Knappenberger is listed as the Grievance Coordinator on the form, with a response date of July 22, 2025. ECF 41-6 at 3.

Per the prison grievance policy and the grievance form, appealing a grievance only requires filling out the bottom "Appeal" section of the grievance form. ECF 41-6 at 3; ECF 45-2, Exhibit C. Plaintiff Concepcion's grievance was not appealed. ECF 41-6 at 3; ECF 45-2, ¶¶ 31–33.

## IV. LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual

showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V. ANALYSIS

### A. Count I: Deliberate Indifference to Medical Needs

Plaintiff Concepcion's first count alleges deliberate indifference to serious medical needs under 42 U.S.C. § 1983. Count I names Nurse Snyder, Nurse Kline, and Dentist Kneal as defendants.

Section 1983 addresses violations of a constitutional right by someone acting "under color" of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Horn, 385 F.3d 321, 332 n.24 (3d Cir. 2004). There is no dispute that Defendants were acting under color of state law. See generally ECF 41-1; ECF 45-1.

Because Plaintiff Concepcion was a pretrial detainee, his medical-care claim arises under the Fourteenth Amendment rather than the Eighth Amendment. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003); ECF 20 at 8. However, an analysis of deliberate indifference claims does not vary between the Fourteenth and Eighth Amendments. Natale, 318 F.3d at 581–82. Therefore, an analysis of a deliberate indifference claim has two parts: (1) an objectively serious medical need, and (2) subjective deliberate indifference to it. Estelle v. Gamble, 429 U.S. 97, 104–06 (1976); Natale, 318 F.3d at 581–82. Deliberate indifference means actual awareness of an excessive risk and disregard of that risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005).

Examples of deliberate indifference include cases where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it; delays necessary medical treatment based on a non-medical reason; or prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (numbering omitted). When medical care is provided, treatment is presumed to be proper "absent evidence that it violates professional standards of care." Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (citation omitted). Medical malpractice, on its own, is not a constitutional violation. Estelle, 429 U.S. at 106.

1. Nurse Snyder

Plaintiff Concepcion had near-full medication compliance for the entire time he was in LCJ custody, apart from July 4, 2025, and the days when he was not in LCJ custody. See ECF 41-5. The medical records show he received all prescribed blood-pressure medications in April and May 2025, missed one dose in June 2025, and received all doses on July 1, July 2, and July 3, 2025. Id. at 3–5. On July 4, 2025, he did not present to the morning medication distribution. Id. at 5; see also ECF 41-2, ¶¶ 27–28. The record shows Nurse Snyder told Plaintiff Concepcion he could request an escort to the medical unit to receive the medication, but he did not do so. ECF 41-2, ¶¶ 37–42; ECF 41-6 at 4. He then received his medication again from July 5 through July 8, 2025. ECF 41-5 at 5.

Plaintiff Concepcion also alleges that he went without medication while housed at Montgomery County Jail from July 9 to July 11, 2025. ECF 20 at 19. But missing medication outside of LCJ is not attributable to Defendant Nurse Snyder. When Plaintiff returned to LCJ and complained of chest pain, LCJ medical staff evaluated him, performed an EKG, rechecked his

blood pressure, prescribed additional medication, and continued to give him his previously prescribed medication to treat his medical conditions. ECF 41-2, ¶¶ 53–60.

The record does not present a genuine dispute of material fact that Nurse Snyder intentionally refused him medication, or that the later chest-pain episode is attributable to Defendant Snyder specifically. ECF 41-1 at 11–12; ECF 41-5. Plaintiff has not cited to particular parts of the record showing that Snyder knew of and disregarded an excessive risk to Plaintiff's health. See ECF 44. Instead, the undisputed record shows one missed medication pass, an available route for Plaintiff to obtain the missed dose by requesting an escort to medical, a medical evaluation when he later complained of chest pain, and the prompt resumption and continuation of his prescribed medications. ECF 41-2, ¶¶ 27–29, 36–46, 52–60; ECF 41-5 at 5. Even accepting that hypertension is a serious medical need, the record does not permit a reasonable inference that Nurse Snyder acted with deliberate indifference. See Farmer, 511 U.S. at 837; Rouse, 182 F.3d at 197. Summary judgment is therefore granted in favor of Defendant Snyder as to Count I.

2. Nurse Kline

Nurse Kline's responsibility in Count I is even more tenuous than Nurse Snyder's. Plaintiff Concepcion alleges Nurse Kline "[d]enied medications on multiple occasions despite knowing about my disability." ECF 20 at 19. However, Plaintiff Concepcion does not identify any specific missed medication tied to Nurse Kline, and he does not cite to particular materials in the record showing that Nurse Kline intentionally denied medication or knew of and disregarded an excessive risk. See ECF 44. Per the record, only one day's worth of medication was missed in addition to July 4 (the doses on June 3). ECF 41-5 at 4–5. Even assuming that those missing doses were Nurse Kline's fault, Plaintiff Concepcion's allegations still fail. The record does not present a genuine dispute of material fact that this medication was denied intentionally or that Plaintiff

Concepcion suffered a medical injury as a result of this missing dose. ECF 41-2, ¶¶ 20–23; ECF 41-5 at 4–5. The medical records instead show near-total compliance with his prescribed blood-pressure medications, no June grievance, sick call, or inmate request tied to a missed dose, and no record evidence that any isolated missed June dose caused a medical injury. ECF 41-2, ¶¶ 20–23; ECF 41-5 at 4–5. Similarly, the record does not permit a reasonable inference that Nurse Kline knew of and disregarded an excessive risk to Plaintiff Concepcion's health. See Farmer, 511 U.S. at 837; Estelle, 429 U.S. at 105–06; Rouse, 182 F.3d at 197. Summary judgment is therefore granted in favor of Defendant Kline as to Count I.

3. Dentist Kneal

Plaintiff Concepcion agreed to the dental extraction after an earlier evaluation. ECF 41-2, ¶¶ 61–66. Dr. Kneal's discovery responses say standard procedures were followed, including anesthesia. ECF 41-4 at 2; ECF 41-5 at 6. LCJ did not permit suction for security reasons. ECF 41-2, ¶ 78; ECF 41-4 at 3. In place of suction, gauze was used, and Plaintiff Concepcion was instructed to swallow saliva and generalized bleeding. ECF 41-2, ¶¶ 79–82; ECF 41-4 at 3. Dr. Kneal explains that suction was not necessary, that gauze controlled the bleeding, and that swallowing saliva and generalized bleeding was medically acceptable. ECF 41-2, ¶¶ 79–82; ECF 41-4 at 3. Plaintiff Concepcion has not cited to particular parts of the record showing that this treatment created an excessive medical risk or fell below constitutionally adequate care. See ECF 44; Estelle, 429 U.S. at 105–06; Pearson, 850 F.3d at 535.

Plaintiff Concepcion also alleges that Kneal made rude comments during the procedure, including that Plaintiff Concepcion had "no rights." ECF 20 at 19. That alleged comment, while troubling if true, does not by itself show that Dr. Kneal knew of and disregarded an excessive medical risk. See Farmer, 511 U.S. at 837; Rouse, 182 F.3d at 197. Plaintiff Concepcion also

alleges nausea, vomiting, trauma, and pain after the procedure, but the record does not show sick calls, inmate requests, or medical records tying those complaints to constitutionally deficient dental care. ECF 41-2, ¶¶ 83–84; ECF 41-5 at 6. The record instead reflects an extraction with consent, local anesthetic, post-operative instructions, pain medication, no noted complications, and no post-extraction medical request tied to nausea or vomiting. ECF 41-2, ¶¶ 65–84; ECF 41-5 at 6. Summary judgment is therefore granted in favor of Defendant Kneal as to Count I.

**B. Count II: Supervisory Liability**

Plaintiff Concepcion's second count alleges supervisory liability under 42 U.S.C. § 1983. Count II names Warden Russell, Nurse Brealey, and Nurse Gaetaniello as defendants.

A defendant in a civil rights action needs personal involvement in the alleged wrong. *Respondeat superior* alone cannot sustain the claim. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement means participation, personal direction, or actual knowledge and acquiescence. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

Two legal theories apply here: (1) a policymaker who, with deliberate indifference, maintained a policy or custom that caused the harm; or (2) a supervisor who participated in, directed, or knew of and acquiesced in the violation. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316–17 (3d Cir. 2014), rev'd on other grounds, Taylor v. Barkes, 575 U.S. 822 (2015).

1. Nurse Brealey

Although Nurse Brealey's title was Director of Nursing, the record does not support treating her as a final policymaker for Count II. The Director of Nursing role answers to the LCJ's Health Services Administrator ("HSA"), uses already-established PrimeCare and facility policies in decision making, and requires HSA approval at each phase of employee discipline. See ECF

41-8. Nurse Brealey had no responsibility for responding to inmate grievances, did not know Plaintiff Concepcion had filed a grievance, and was not aware of any issues with Plaintiff Concepcion receiving his prescribed medications. ECF 41-2, ¶¶ 4, 30–32; ECF 41-7 at 2. The record does not present a genuine dispute of material fact that Nurse Brealey directed Defendants Snyder or Kline to deny medication, knew of an unconstitutional denial of care, or maintained a policy or custom that caused one. ECF 41-2, ¶¶ 4, 30–32; ECF 41-7 at 2; see Barkes, 766 F.3d at 316–17. Summary judgment is therefore granted in favor of Defendant Brealey as to Count II.

2. Nurse Gaetaniello

Similarly, the record does not support treating Defendant Nurse Gaetaniello as a final policymaker. She was the Assistant Director of Nursing, and the record shows that she did not have any grievances or requests submitted by Plaintiff Concepcion. ECF 41-2, ¶¶ 5, 33–35. She also was not required to respond to grievances or inmate requests and did not know of the complaints about alleged denial of medication. Id. The record likewise does not present a genuine dispute of material fact that Nurse Gaetaniello directed Defendants Snyder or Kline to deny medication, knew of an unconstitutional denial of care, or maintained a policy or custom that caused one. Id.; ECF 41-9 at 2; see Barkes, 766 F.3d at 316–17. Summary judgment is therefore granted in favor of Defendant Gaetaniello as to Count II.

3. Warden Russell

The Prison Litigation Reform Act ("PLRA") requires administrative exhaustion before suit. 42 U.S.C. § 1997e(a). Proper exhaustion means following all the prison's own grievance procedures as a precondition to filing suit. Woodford v. Ngo, 548 U.S. 81, 88, 90–91 (2006). Exhaustion is judged against the prison's internal grievance policy. Spruill v. Gillis, 372 F.3d 218, 222, 231 (3d Cir. 2004). Exhaustion must happen before the suit is filed, not while the case is

pending. Ahmed v. Dragovich, 297 F.3d 201, 206, 210 (3d Cir. 2002); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential). Exhaustion is excused only where administrative remedies are "unavailable" as a practical matter, meaning where the process is a dead end, too opaque to navigate, or blocked by staff through misrepresentation or intimidation. Ross v. Blake, 578 U.S. 632, 643–44 (2016).

Exhaustion is also a threshold issue the district court resolves before reaching the merits of the case, even where it requires resolving disputed facts. Small v. Camden Cnty., 728 F.3d 265, 269–71 (3d Cir. 2013). But exhaustion is an affirmative defense, so it can only be considered when defendants have raised and proven it. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Here, Defendants Russell and Knappenberger raised exhaustion, which this Court will evaluate.

Under Paladino, courts must provide notice and an opportunity to respond before resolving disputed exhaustion facts as a factfinder under Small. Paladino v. Newsome, 885 F.3d 203, 210–11 (3d Cir. 2018). When there are factual disputes, district courts have latitude to determine what that notice and opportunity should look like in each case. Id. at 211. A full evidentiary hearing is not necessarily required. Id.

Importantly, here, not all of Plaintiff Concepcion's assertions about exhaustion create a genuine factual dispute. In Paladino, for example, the Third Circuit distinguished general, unsupported assertions from specific sworn testimony. Id. at 208–10. Vague assertions that prison records were incomplete or that grievances "vanished" were not enough by themselves. Id. at 208. In contrast, sworn testimony that the plaintiff "submitted no less than six" forms about the incident at issue was specific enough to create a dispute. Id. at 209–10.

Here, Plaintiff Concepcion's Amended Complaint and Motion in Opposition says he appealed to the warden and grievance investigator and reached out "verbally and in writing." ECF

20 at 19; ECF 44. That statement, while part of the record, is too general to create a genuine dispute. See Paladino, 885 F.3d at 208–10. Plaintiff Concepcion provides no date, recipient, form, copy, description of what he submitted, or other account of how Defendants Russell or Knappenberger prevented him from appealing. ECF 20 at 19; ECF 44. Plaintiff Concepcion's assertions are more like the vague "vanished" grievance side of Paladino than to the specific "six forms" testimony that required further factfinding. Paladino, 885 F.3d at 208–10.

Similarly, Small does not change the result. Small held that a prison's failure to respond to a grievance can make the appeal process unavailable. Small, 728 F.3d at 273–74. But this is not a no-response case. The record shows that Plaintiff Concepcion's medication grievance was answered on July 22, 2025. ECF 41-6 at 3–4. The question is not whether there was nothing to appeal, it is whether he appealed the decision he received under the LCJ policy and grievance form. Id.; ECF 45-2, Exhibit C. The Supreme Court later found in Perttu that PLRA exhaustion goes to a jury when the exhaustion dispute and the merits of a jury-triable claim turn on the same facts. Perttu v. Richards, 605 U.S. 460, 464, 468 (2025). There, the plaintiff's claim that prison staff destroyed grievance forms was tied both to his defense of exhaustion and to his First Amendment retaliation claim: "both depend[ed] on whether Perttu did in fact destroy Richards's grievances and retaliate against him." Id.

To the extent Concepcion's Amended Complaint could be read to argue his grievance process was unavailable under Ross, 578 U.S. at 643–44 (identifying dead-end, opaque, and thwarted-access forms of unavailability), it is not supported by the record: his medication grievance was accepted, investigated, and answered under the clearly defined jail grievance procedure. ECF 41-6 at 3–4; ECF 45-2, Exhibit C. His general assertion that appeals were "ignored" is too vague, under Paladino, to show that officials thwarted his access to that process.

See Paladino, 885 F.3d at 208–10. Plaintiff Concepcion does not cite to particular parts of the record that would support a more specific argument. See ECF 20 at 19; ECF 44.

Since nothing in the record shows that Plaintiff Concepcion properly appealed his filed grievance related to the missing medication, or that a grievance was filed with respect to a dental claim, he did not exhaust his administrative remedies prior to filing suit, as required under the PLRA. ECF 41-6 at 3–4; ECF 45-1 at 6–8; ECF 45-2, ¶¶ 31–33; ECF 45-2, Exhibit C; see Ross, 578 U.S. at 638–39; Small, 728 F.3d at 268–71. Therefore, summary judgment on exhaustion grounds is hereby granted in favor of Defendant Russell as to Count II.

In the alternative, even if Plaintiff Concepcion did properly exhaust (or the grievance process was unavailable), the record does not show that Warden Russell established a policy that caused Plaintiff Concepcion's alleged medical harm, personally directed any denial of care, or knew of and acquiesced in unconstitutional medical treatment. ECF 45-1 at 8–11; ECF 45-2, ¶¶ 32–34; see Barkes, 766 F.3d at 316–17.

**C. Count III: Retaliation and Interference with the Grievance Process**

Plaintiff Concepcion's third count alleges retaliation and interference with the grievance process under 42 U.S.C. § 1983. Count III names Warden Russell and Grievance Investigator Knappenberger as defendants.

A retaliation claim requires protected conduct, an adverse action that would deter a person of ordinary firmness, and a causal link between the two. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Filing a grievance or lawsuit is protected conduct. Watson v. Rozum, 834 F.3d 417, 422–23 (3d Cir. 2016). Retaliation can be shown through a pattern of antagonism, but the plaintiff must still identify a genuine issue of material fact as to a causal nexus. Id. at 424.

Per the record, Plaintiff Concepcion alleges that his prior § 1983 complaint went missing while he was out of LCJ for court. ECF 20 at 27. The record shows he requested a replacement and received one the same day. Id. Beyond that, Plaintiff Concepcion does not cite to particular parts of the record which show that Warden Russell or Grievance Investigator Knappenberger took an adverse action against him because he filed a grievance or lawsuit. See ECF 44. Plaintiff Concepcion's general assertion that grievances and requests were ignored or blocked is not enough to support a retaliation claim on summary judgment. Fed. R. Civ. P. 56(c)(1); see Paladino, 885 F.3d at 208–10.

To the extent Count III is framed as interference with the grievance process separate from retaliation, that standalone theory fails because prisoners do not have a constitutional right to prison grievance procedures. Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (nonprecedential) (citation omitted). The specific constitutional question is therefore whether Defendants retaliated against Plaintiff Concepcion for protected conduct or otherwise deprived him of a separate constitutional right. The record does not permit that inference. The medication grievance was accepted, investigated, and answered. ECF 41-6 at 3–4. The grievance form told Plaintiff Concepcion how to appeal to the Warden, and LCJ policy required that appeal within seven calendar days. ECF 41-6 at 3; ECF 45-2, Exhibit C. Plaintiff Concepcion's filings assert in general terms that appeals were ignored, but they do not identify a specific date, form, recipient, or specific act by Defendants Russell or Knappenberger that blocked an appeal. See ECF 20; ECF 44; see also Paladino, 885 F.3d at 208–10.

For the same reasons discussed above, to the extent Plaintiff Concepcion's briefing could be read to argue his grievance process was unavailable under Ross, 578 U.S. at 643–44 (identifying dead-end, opaque, and thwarted-access forms of unavailability), that argument is unsupported by

the record. See ECF 20; ECF 44. His medication grievance was accepted, investigated, and answered under the clearly defined jail grievance procedure, and his general assertion that appeals were "ignored" is too vague, under Paladino, to show that officials thwarted his access to that process. ECF 41-6 at 3–4; ECF 45-2, Exhibit C; see Ross, 578 U.S. at 643–44; Paladino, 885 F.3d at 208–10.

Plaintiff Concepcion's argument for not completing the appeal and his Count III retaliation or interference theory both depend on whether Defendants Russell and Knappenberger actually ignored or blocked his grievances. But Perttu only explains who decides a genuine, intertwined dispute. See Perttu, 605 U.S. at 464, 479. It does not change the threshold question whether a genuine dispute exists. For that threshold question, Paladino remains controlling. See Paladino, 885 F.3d at 208–10. Because Plaintiff Concepcion's assertion is too general and unsupported to create a genuine dispute, there is no exhaustion question to send to a jury under Perttu. See Perttu, 605 U.S. at 464, 479; Paladino, 885 F.3d at 208–10. Summary judgment is therefore granted in favor of Defendants Russell and Knappenberger on Count III.

### D. Count IV: State Law Negligence / Medical Negligence

Plaintiff Concepcion's fourth and final count alleges state law negligence or medical negligence under Pennsylvania law. Count IV names Nurses Snyder, Kline, Brealey, Gaetaniello, and Dentist Kneal as defendants.

These claims are brought under Pennsylvania state law, which the Court has the power to hear under supplemental jurisdiction. 28 U.S.C. § 1367. But under § 1367(c)(3), the Court may decline to exercise that jurisdiction once every federal claim has been resolved. As all federal claims have been resolved, this Court now declines to exercise supplemental jurisdiction over Count IV.

Therefore, this Court dismisses Count IV without prejudice. Plaintiff is free to bring this claim in state court. In dismissing, this Court expresses no opinion on the merits of this claim.

## VI. CONCLUSION

The record does not permit Plaintiff Concepcion's federal claims to proceed to trial. The medical record reflects isolated missed medication, later evaluation and treatment, and no evidence that any medical defendant knowingly disregarded an excessive risk to Concepcion's health. ECF 41-1; ECF 41-2; ECF 41-5. The record also does not support supervisory liability, proper exhaustion of the jail grievance process, or a retaliation claim against the Prison Defendants. ECF 41-6; ECF 45-1; ECF 45-2.

An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-4479 Concepcion v Russel\Concepcion MSJ Opinion.docx